# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RATEEK ALLAH,** : | |
| : | |
| **Plaintiff** : | |
| : | **CIVIL ACTION NO. 3:18-CV-2047** |
| **v.** : | |
| : | **(Judge Caputo)** |
| **WARDEN BEASELY, et al.,** : | |
| : | |
| **Defendants** : | |

# M E M O R A N D U M

On October 12, 2018, Rateek Allah, a federal prisoner formerly held at Allenwood Federal Correctional Complex (FCC-Allenwood), in White Deer, Pennsylvania, filed a *pro se* civil rights action pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[1] (ECF No. 1.) He seeks leave to proceed without prepayment of the filing fee. (ECF Nos. 2 and 10.) He asserts seven claims against ten Bureau of Prisons (BOP) FCC-Allenwood employees: Warden Beasely; Unit Manager Rodarmel; Dr. Stahl; Dr. Bushman; Pamela Cook; Mr. Constant; Ms. Holtzapple; Mr. Shaffer; Captain Han and Mr. Veigh. (ECF No. 1.) He challenges his placement at FCC-Allenwood; the denial of a medical transfer; the cost of commissary items; the retaliatory denial of a portable urinal while temporarily housed in the Special Housing Unit (SHU); his SHU conditions of confinement; the lack of variety and nutritional content of the institution's menu; and the loss of outgoing legal mail. (*Id.*)

---

[1] According to the Bureau of Prisons' Inmate Locator, Mr. Allah is currently held at the Coleman II United States Penitentiary (USP Coleman-2), in Sumterville, Florida. *See* https://www.bop.gov/inmateloc/ (last visited Sept. 19, 2019).

The Court proceeds to screen the Complaint pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A. Mr. Allah's request for leave to proceed *in forma pauperis* will be granted. However, for the reasons set forth below, the Complaint will be dismissed with leave to amend. See 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Also pending before the Court are two motions for preliminary injunction. (ECF Nos. 7 and 8.) The Court will deny these motions as moot due to Mr. Allah's to transfer from FCC-Allenwood.

## II. Standard of Review for Screening *Pro Se In Forma Pauperis* Complaints

When a litigant seeks to proceed *in forma pauperis*, without payment of fees, 28 U.S.C. § 1915 requires the court to screen the complaint. See 28 U.S.C. § 1915(e)(2)(B). Likewise, when a prisoner seeks redress from a government defendant in a civil action, whether proceeding *in forma pauperis* or not, the court must screen the complaint. See 28 U.S.C. § 1915A(a). Both 28 U.S.C. § 1915(e)(2)(B) and § 1915(A) give the court the authority to dismiss a complaint if it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(i) - (iii); 28 U.S.C. § 1915A(b)(1) – (2); *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013).

A complaint is frivolous if it lacks an arguable basis either in law or fact. See *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (citing *Neitzke v. Williams*, 490 U.S. 319, 327-28, 109 S.Ct. 1827, 1832 - 33, 104 L.Ed.2d 338 (1989)). In deciding whether the complaint fails to state a claim on which relief may be granted, the court employs the standard used to analyze motions to dismiss under Fed. R. Civ. P. 12(b)(6). See *Allah v.*

*Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000). Under Rule 12(b)(6), the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 - 11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 1949 - 50, 173 L.Ed.2d 868 (2009)). The court may also rely on exhibits attached to the complaint and matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a)(2). A complaint is required to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)).

To test the sufficiency of the complaint, the court "must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, a court must "take note of the elements a plaintiff must plead to state a claim." *Id.* (internal quotations and brackets omitted). Second, the court must identify allegations that are merely legal conclusions "because they . . . are not entitled to the assumption of truth." *Id.* While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964). Third, a court should assume the veracity of all well-pleaded factual allegations and "then determine whether they plausibly give rise to an entitlement to relief." *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1949).

A complaint filed by a *pro se* plaintiff must be liberally construed and "held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Fantone v. Latini*, 780

F.3d 184, 193 (3d Cir. 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 - 21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972)); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). Yet, even a *pro se* plaintiff "must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted). *Pro se* litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 861 (3d Cir. 2014). A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

With these principles in mind, the Court sets forth the background to this litigation, as Plaintiff alleges it in his Complaint.

### III. Allegations of the Complaint

Prior to his transfer to FCC-Allenwood, Mr. Allah was housed at FCI-Estill were staff "maliciously" "overscored" him and accused him of assaulting a staff member. FCI-Estill staff "overscored" him in effort "to railroad Mr. Allah to the penitentiary." (ECF No. 1 at 7.) Once at FCC-Allenwood, Mr. Allah complained to Warden Beasely and his Unit Manager, Mr. Rodarmel, that he was erroneously over classified and should be housed in a medium security prison. (*Id*.)

Next, Mr. Allah who suffers from HIV and AIDS, argues he "is in his last stage of life." (*Id*. at 8.) He suffers from an incurable brain infection and is extremely fragile requiring his placement in a medical facility where he can receive 24-hour nursing care in

a long-term care unit.  (*Id*. at 8-9.)  These ailments are chronic and incurable.  Plaintiff claims that Dr. Stahl, Dr. Bushman and Pamela Cook denied his transfer request for monetary reasons and are "intentionally to try and kill [him and] let him die in prison." (*Id*. at 8-9.)  Dr. Bushman falsified portions of the medical transfer request when he stated Mr. Allah was non-compliant with his medication and did not have dementia.  (*Id*. at 8.)  Dr. Bushman denied Mr. Allah's request for a transfer without ever examining him.  (*Id*. at 9.)  Drs. Bushman and Stahl cosigned fraudulent medical entries by a former staff member who reported seeing Mr. Allah walking when he is confined to a wheelchair.  (*Id*. at 8-9.)  Mr. Allah raised these concerns with Dr. Stahl, Dr. Bushman and Pamela Cook to no avail.  (*Id*.)

In his third claim, Mr. Allah asserts that the institution's commissary, run by Mr. Constant, overcharges for items, and does not have the same television services, video rental practices, and does not ""give out prizes for holidays" like other facilities.  (*Id*. at 10.)  Mr. Allah accuses Mr. Constant of stealing money from the Inmate Trust Fund.  (*Id*.)

Next, on an unspecified date, while in the SHU, Mr. Allah asked Ms. Holtzapple for "a urinal the SHU Lieutenant approved for him to have … in his possession." (*Id*. at 11.)  Ms. Holtzapple asked if Mr. Allah was suing Ms. Martinez (non-defendant).  When he responded affirmatively, Ms. Holtzapple discontinued his use of a urinal.  (*Id*.)  Mr. Allah used other containers as a portable urinal while in the SHU.  Without a urinal, Mr. Allah frequently smelled of urine and soiled his bed linens.  (*Id*.)  Ms. Holtzapple discontinued Mr. Allah's use of a urinal in retaliation for his lawsuit against Ms. Martinez.  (*Id*.)

Mr. Allah's fifth claim argues that per Captain Han and Warden Beasley, SHU inmates do not receive the same amenities as general population inmates.  (*Id*. at 15.)  SHU inmates may not possess radios or purchase commissary food items.  Staff may

take away an inmate's recreation time for having a piece of paper on the floor. (*Id*.) The books available to SHU inmates are tattered and worn. (*Id*.) Mr. Allah also claims he was denied a copy of his "contact list," the name and address of his friends and family, while in the SHU. (*Id*.)

Next, Mr. Allah claims that Mr. Shaffer, the institution's Food Service Director, does not follow the national menu and fails to serve nutritionally adequate meals. Additionally, he serves the same meals every week. Mr. Shaffer also does not provide sweet desserts at lunch and serves inmates processed meats. (*Id*. at 12-13.) Mr. Shaffer does not survey the inmate population to see which meals they prefer or dislike. (*Id*. at 12.) Mr. Allah believes Mr. Shaffer economizes on the menu and portions to save money. He claims Mr. Shaffer is "stealing the money sent to feed the prisoners." (*Id*.) "The current menu can be considered cruel and unusual punishment." (*Id*. at 12.)

In his final claim, Mr. Allah alleges that several pieces of Mr. Allah's outgoing legal mail never reached the Court. (*Id*. at 14.) Mr. Veigh, the Mailroom Supervisor, told Mr. Allah to send his mail certified so it could be tracked. One of Mr. Allah's cases was dismissed by the Court because it failed to receive his *in forma pauperis* motion. (*Id*.) Mr. Allah claims that Mr. "Veigh is liable for the actions of his department." (*Id*.)

Mr. Allah seeks compensatory and punitive damages from each Defendants. (*Id*. at 16.)

## IV. Discussion

### A. Warden Beasley and Unit Manager Rodarmel's Alleged Failure to Correct Mr. Allah's Misclassification Fails to State a Claim

Here, Mr. Allah alleges Warden Beasley and Unit Manager Rodarmel failed to take any action on his erroneous classification to a penitentiary rather than a medium security facility. "[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain" a civil rights claim. *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) (citation omitted).

It is well-settled that a prisoner has no right or legally enforceable expectation to be assigned to, or to remain at, any prison. Pursuant to 18 U.S.C. § 3621(b), the BOP may confine a prisoner in any facility and transfer him at any time. *McKune v. Lile*, 536 U.S. 24, 39, 122 S.Ct. 2017, 2027-28, 153 L.Ed.2d 47 (2002) ("It is well established that the decision where to house inmates is at the core of prison administrators' expertise."); *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) (an inmate does not have a due process right to remain in or be transferred to any prison).

As Mr. Allah does not have a constitutional right or liberty interest in his placement in any particular facility, he fails to state a claim against Warden Beasley or Unit Manager Rodarmel based on their alleged failure to investigate or satisfactorily resolve the issue of his alleged "overscoring" issue. For these reasons, Mr. Allah's claims against Warden Beasley and Unit Manager Rodarmel will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

### B. The Denial of a Medical Transfer does not Rise to the Level of an Eighth Amendment Violation.

The Eighth Amendment prohibits the " 'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.' " *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (quoting *Helling v. McKinney*, 509 U.S. 25, 32, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22, 31 (1993)). In the context of prison medical care, to show a violation of the Eighth Amendment an inmate plaintiff must allege two things. First, he must demonstrate that the defendant prison officials or employees had a subjective state of mind indicating they were deliberately indifferent to his medical needs. Second, he must prove that those medical needs were objectively serious. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017). "[T]the Eighth Amendment does not apply to every deprivation, or even every unnecessary deprivation suffered by a prisoner, but *only* that narrow class of deprivations involving 'serious' injury inflicted by prison officials acting with a culpable state of mind." *Hudson v. McMillan*, 503 U.S. 1, 20, 112 S.Ct. 995, 1006, 117 L.Ed.2d 156 (1970) (emphasis original). Without the requisite mental state, a prison official's conduct alone will not constitute deliberate indifference. *See Farmer v. Brennan,* 511 U.S. 825, 837-39, 114 S.Ct. 1970, 1979-80, 128 L.Ed.2d 811 (1994). Disagreements between an inmate and a physician over the inmate's proper medical care does not rise to the level of an Eighth Amendment claim for the denial of medical care. *See Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d. Cir. 1993) (citing *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir.1987)).

Taking the allegations of Mr. Allah's Complaint as true, he "is in his last stage of life … [and] was given until this year life expectancy to live." (ECF No. 1 at 8.) However, the chronic and incurable nature of Mr. Allah's illnesses do not elevate Dr. Bushman, Dr.

Stahl, and Ms. Cook's decision to deny his request for a medical transfer to a constitutional violation. According to Mr. Allah, his physicians believe he is "faking" the severity of his medical limitations and is non-compliant with his medication. Mr. Allah contends "the standard … level [of] care" for his medical condition "is [to] transfer [him] to a medical center," *id*. at 8-9. His treating physicians disagree. This medical disagreement does not assert an Eighth Amendment claim. Moreover, the fact that Mr. Allah was previously housed at a medical facility or suffered injuries while housed at non-medical facilities (other than FCC-Allenwood), also does not suggest how Dr. Stahl, Dr. Bushman or Ms. Cook were deliberately indifferent to his serious medical needs. (*Id.* at 9.) Mr. Allah's claims the Defendants' alleged desire to "cash in" on the government money paid to them "for treating [him]" rather than transfer him also does not state an Eighth Amendment claim as he does not allege these monetary considerations prevented him from receiving necessary medical care. To the extent Plaintiff claims Defendants denied his transfer request in retaliation for his filing of medical grievances, as discussed *infra*, this claim fails to state a cognizable *Bivens* action.

Mr. Allah's disagreement with the Defendants' reasoning for denying his transfer to a medical facility does not rise to the level of an Eighth Amendment claim. Accordingly, Mr. Allah's claims against Dr. Stahl, Dr. Bushman and Ms. Cook will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**C. Allegations of High-Priced Commissary Fails to state a Claim**

The Eighth Amendment requires that convicted prisoners be provided "the minimal civilized measure of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Life's necessities consist of shelter, sanitation, food,

personal safety, medical care, and clothing. *Farmer,* 511 U.S. at 832, 114 S.Ct. at 1976. "[N]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny. After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Fuentes v. Wagner,* 206 F.3d 335, 344 (3d Cir. 2000).

Mr. Allah argues that "Mr. Constant needs to be put under audit" due to the higher than normal prices charged for FCC Allenwood commissary items when compared to other facilities. (ECF No. 1 at 10.) He also complains that FCC Allenwood does not offer the same cable channel line-up or "give[s] prizes for holidays" like other facilities. (*Id*.) These allegations do not state an Eighth Amendment violation as courts have consistently held that prisoners have no constitutional right to purchase products at a certain price or at a price comparable to that offered at a retail store. See *McCall v. Keefe Supply Co.*, 71 F. App'x 779, 780 (10th Cir. 2003) (claim that prisoner was overcharged for commissary goods failed to state a constitutional claim); *French v. Butterworth*, 614 F.2d 23, 24 (1st Cir. 1980) (prisoners do not have constitutionally protected right to be able to purchase commissary items at or near cost); *Bullock v. Cohen*, No. 17-271, 2018 WL 2411604, at * 7 (D.N.J. May 29, 2018) (same). Hence, Mr. Allah's claim against Mr. Constant will be dismissed pursuant to 28 U.S.C. § 1915 (e)(2)(B)(ii).

### D. *Bivens* Fails to Provide a Remedy for Mr. Allah's First Amendment Retaliation claim against Ms. Holtzapple.

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, \_\_\_\_\_ U.S. \_\_\_\_\_, \_\_\_\_\_, 139 S.Ct. 1715, 1722, 204 L.Ed.2d 1 (2019) (quoting *Hartman*

*v. Moore*, 547 U.S. 250, 256, 126 S.Ct. 1695, 1701, 164 L.Ed.2d 441 (2006)). "Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right.'" *Hartman*, 547 U.S. at 256, 126 S.Ct. at 1701 (quoting *Crawford-El v. Britton*, 523 U.S. 574, 588, n. 10, 118 S.Ct. 1584, 1592, n. 10, 140 L.Ed.2d 759 (1998)). A prisoner alleging a retaliation claim must demonstrate (1) participation in constitutionally protected conduct; (2) an adverse action by prison officials that is sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him. *Mitchell,* 318 F.3d at 530 (internal quotation marks and brackets omitted).

Here, Mr. Allah claims Ms. Holtzapple discontinued his medically authorized portable urinal because he filed a lawsuit against another employee. (ECF No. 1 at 11.) Guided by the above cases, Mr. Allah has asserted a First Amendment retaliation claim against Ms. Holtzapple. However, the Court must now assess whether *Bivens* provides a remedy for such a claim.

To date, the Supreme Court has only recognized a *Bivens* remedy in the context of the Fourth, Fifth, and Eighth Amendments. *See Bivens*, 403 U.S. 388, 91 S.Ct. 1999 (Fourth Amendment prohibition against unreasonable searches and seizures); *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (Fifth Amendment gender-discrimination in the employment context); *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (Eighth Amendment Cruel and Unusual Punishment Clause for failure to provide inmate adequate medical treatment). The Supreme Court recently held that "expanding the *Bivens* remedy is now a disfavored judicial activity," and has "consistently refused to extend *Bivens* to any new context or new category of defendants.

*Ziglar v. Abbasi*, _____ U.S. _____, 137 S.Ct. 1843, 1857, 198 L.Ed.2d 290 (2017) (citations omitted).

Post-*Ziglar*, courts must conduct a two-part test to determine a claim for relief expands the *Bivens* remedy to a new context or category of defendants. *Id.* at _____, 137 S.Ct. at 1859, 1864. The context is new if it is different in a "meaningful" way from the three established *Bivens* cases. (*Id.*) "Meaningful" differences can be based on:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at _____, 137 S. Ct. at 1860. Second, if the case presents a new context, the court must consider whether "special factors counsel hesitation" against extending *Bivens* into this area in the absence of affirmative action by Congress. *Id.* at _____, 137 S. Ct. at 1857-58. Thus, "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." (*Id.*) "[I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy," then the Judiciary should defer and allow Congress to play its proper role. *Id.* at _____, 137 S. Ct. at 1858. This analysis requires the Court to assess the impact on governmental operations system-wide, including the burdens on government employees who are sued personally, as well as the projected cost and consequences to the government itself. *Id.* Additionally, the court must consider "the existence of alternative remedies usually precludes a court

from authorities a *Bivens* action." *Id.* at \_\_\_\_\_, 137 S. Ct. at 1865. In the prison context, the Supreme Court noted that:

> Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. *See* 42 U.S.C. § 1997e. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs … [T]he Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Id.* at \_\_\_\_\_, 137 S. Ct. at 1865.[2]

Turning to Mr. Allah's First Amendment claim, the Court notes that the Third Circuit Court of Appeals has held that the "recognition of a cause of action under a constitutional amendment does not mean that such an action can vindicate every violation of the rights afforded by that particular amendment." *Vanderklok v. United States* 868 F.3d 189, 199 (3d Cir. 2017). That is the case here. The Supreme "Court has declined to create an implied damages remedy" in the context of a First Amendment claim. *Id.* at \_\_\_\_\_, 137 S. Ct. at 1857 (citing *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)). The Third Circuit Court of Appeals held:

> [i]n *Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018), [the Third Circuit Court of Appeals] observed that "[t]he Supreme Court has never recognized a *Bivens* remedy under the First Amendment," *id.* at 95, and concluded that special factors militated against recognizing such a remedy in the prison context because the prisoner's "retaliation claim involves executive policies, implicates separation-of-power concerns,

---

[2] Claims redressable via the Prison Litigation Reform Act's (PLRA) covers "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002).

- 13 -

and threatens a large burden to both the judiciary and prison officials," *id.* at 96.

*Jones v. Sposato*, No. 17-3335, 2019 WL 3546470 (3d Cir. Aug. 5, 2019); *see also Vanderklok v. United States* 868 F.3d 189, 199 (3d Cir. 2017) (declining to extend *Bivens* to First Amendment retaliation claim filed against a Transportation Safety Administration screener); *Watlington on behalf of FCI Schuylkill African Am. Inmates v. Reigel*, 723 F. App'x 137, 140 n. 3 (3d Cir. Jan 22, 2018) (affirmance of district court's dismissal of federal prisoner's First Amendment retaliation claim against BOP staff as non-cognizable *Bivens* claim).

As noted above, Mr. Allah adequately pleads a First Amendment retaliation claim against Ms. Holtzapple, however, after *Ziglar,* he fails to state a cognizable *Bivens* claim. Additionally, based on the special factors that counsel hesitation and the existence of alternative remedies, the Court declines to find an implied *Bivens* cause of action with respect to Mr. Allah's First Amendment retaliation claim against Ms. Holtzapple. Accordingly, the Court will dismiss Mr. Allah's First Amendment retaliation claim against Ms. Holtzapple. This claim will be dismissed with prejudice as leave to amend would be futile in light of *Ziglar*, *Jones, Vanderklok* and *Watlington.*

### E. Mr. Allah Fails to State an Eighth Amendment Conditions of Confinement Claim

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care, and personal safety. *See Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994); *Helling v. McKinney*, 509 U.S. 25, 31-32, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993). Prison

conditions constitute cruel and unusual punishment if they result in serious deprivations of basic human needs. *See Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410 (3d Cir. 2000). A condition of confinement implicates the Eighth Amendment if it is so reprehensible as to be deemed inhumane under contemporary standards or deprives an inmate of minimal civilized measures of the necessities of life. *See Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298-99, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991). Moreover, the fact that one or more conditions would not independently constitute an Eighth Amendment violation is not dispositive when the conditions, in combination, have a "mutually enforcing effect" of producing an unconstitutional deprivation. *Wilson*, 501 U.S. at 304, 111 S.Ct. at 2327. However, the Eighth Amendment does not mandate that prisons be free of discomfort. *Farmer*, 511 U.S. at 832, 114 S.Ct. at 1976 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400, 69 L.Ed.2d 59 (1981) ). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes,* 452 U.S. at 347, 101 S.Ct. at 2399. Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson,* 503 U.S. at 9, 112 S.Ct. at 1000.

An Eighth Amendment conditions of confinement claim requires both objective and subjective proof. A prisoner must demonstrate: first, that he or she has been subjected to an objectively "serious" deprivation of life's basic needs or a "substantial risk of serious harm" to his or her health; and, second, that defendants knew of and were deliberately indifferent to that deprivation or risk. *Farmer*, 511 U.S. at 834, 114 S.Ct. at 1977; *Tillman,* 221 F.3d at 418. Deliberate indifference requires that a prison official acted with actual

awareness of excessive risks to the plaintiff's safety. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).

Mr. Allah contends the rules put in place by Warden Beasley and Captain Hall that restrict a SHU inmate's possession of a radio, limit commissary purchases, unit rules which if violated may result in the loss of recreation, constitute cruel and unusual conditions of confinement. (ECF No. 1 at 15.) The Court disagrees because Mr. Allah does not contend that while in the SHU, he was deprived of adequate food to thrive, clothing, shelter, sanitation, medical care, or personal safety, he fails to satisfy the objective element pertinent to an Eighth Amendment claim. Additionally, Mr. Allah does not allege he suffered any harm as a result of his SHU conditions of confinement. Rather, he disagrees with the austere environment of the SHU when compared to the privileges enjoyed by general population inmates. Taking the allegations of the Complaint as true, Mr. Allah's conditions of confinement claim fails to rise to the level of an Eighth Amendment violation. The Court will dismiss this claim with leave to amend.

### F. Mr. Allah Fails to State an Access to Courts Claim

Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346, 116 S.Ct. 2174, 2177, 135 L.Ed.2d 606 (1996). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Monroe v. Beard*, 536 F.3d 198, 205–06 (3d Cir. 2008) (citing *Christopher v. Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179, 2186-87, 153 L.Ed.2d 413

(2002)). Prisoners bringing an access to the court claim "must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Id.* at 205-06 (citing *Christopher*, 536 U.S. at 416–17, 122 S.Ct. at 2187); *see also Schreane v. Holt*, 482 F. App'x. 674, 676 (3d Cir. 2012) (A plaintiff does not establish a constitutional violation when he establishes only that he had a "mere hope" that he would prevail on the underlying claim.). Finally, because government officials may not be held liable for the alleged unconstitutional acts of others, plaintiff must demonstrate that each named government defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676, 129 S.Ct. 1948. A plaintiff must establish that a defendant personally directed or had "actual knowledge and acquiescence" of the alleged unconstitutional conduct. *Rode*, 845 F.2d at 1207.

Considering the above case law, Mr. Allah has failed to allege facts establishing an access-to-the-courts claim against Mr. Veigh. First, as noted above, Mr. Allah cannot sue Mr. Veigh under a theory of *respondeat superior.* Plaintiff specifically states he seeks to hold Mr. Veigh "liable for the actions of his department". (ECF No. 1 at 14.) Second, Mr. Allah states that his lawsuit was dismissed because his *in forma pauperis* application failed to reach the Court. However, he was not actually harmed as a result of this event as he successfully refiled his action without incident. [3] Mr. Allah's access-to-the-courts claim against Mr. Veigh will be dismissed.

---

[3] The Court takes judicial notice of the docket in the case to which Mr. Allah refers: *Allah v. Martinez*, 3:18-cv-1114 (M.D. Pa.). On July 9, 2018, this Court dismissed that action without prejudice due to Mr. Allah's failure to timely submit an application to proceed *in forma pauperis* and Authorization forms. In dismissing the action, the Court was careful to note that the actions which served the basis for that Complaint took place in March 2018. Thus, Mr. Allah was not harmed by the dismissal of the action. In fact, Mr. Allah filed a new complaint against Ms. Martinez shortly thereafter. *See Allah v. Martinez*, 3:18-CV-1547 (M.D. Pa.).

### G. Leave to File an Amended Complaint

The Court will grant Mr. Allah twenty-one days to file an amended complaint to replead all claims except for his retaliation claim against Ms. Holtzapple. If Mr. Allah decides to file an amended complaint, he must clearly label it, on the face of the document, "Amended Complaint." It must bear the docket number assigned to this case and must be retyped (double spaced) or legibly rewritten (double spaced) in its entirety, on the court-approved form.[4] In addition, any amended complaint filed by Mr. Allah supersedes (replaces) the original complaint already filed. It must be "retyped or reprinted so that it will be complete in itself including exhibits." M.D. Pa. LR 15.1; *see also W. Run Student Hous. Assocs. v. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013). Mr. Allah may not reassert his retaliation claim against Ms. Holtzapple or add new claims against new Defendants in his amended complaint. He may only augment his factual pleading concerning his existing claims.

Additionally, the Court cautions Mr. Allah that his amended complaint must be concise and direct. *See* Fed. R. Civ. P. 8(d). Each allegation must be set forth in individually numbered paragraphs in short, concise, and simple statements. *Id.* The allegations in the amended complaint may not be conclusory. Instead, Plaintiff must plead facts to show how each defendant named is personally involved or responsible for the alleged harm. In other words, the allegations should be specific enough as to time and place of the alleged violations and must identify the specific person or persons

---

[4] In the "Caption" section of the amended complaint, Plaintiff must state the first and last name, to the extent he knows it, of each defendant he wishes to sue. Plaintiff should also indicate whether he intends to sue each defendant in his or her individual capacity, official capacity, or both.

responsible for the deprivation of his constitutional rights and what each defendant did to harm him.  *Iqbal*, 556 U.S. at 676, 129 S.Ct. at 1948.

If Plaintiff fails to file an amended complaint on the Court's form within twenty-one days, and in compliance with the Court's instructions, the Court will dismiss his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

Finally, the Court reminds Plaintiff of his obligation to advise the Court of any change of address.  *See* M.D. Pa. LR 83.18.  His failure to do so will be deemed as his abandonment of the lawsuit resulting in the dismissal of the action.


**H.	Mr. Allah's Motions for Preliminary Injunction will be Denied.**

"Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances."  *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).  In determining whether to grant a preliminary injunction, a court must consider whether the party seeking the injunction has satisfied four factors: "1) a likelihood of success on the merits; 2) he or she will suffer irreparable harm if the injunction is denied; 3) granting relief will not result in even greater harm to the nonmoving party; and 4) the public interest favors such relief."  *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010) quoting *Miller v. Mitchell*, 598 F.3d 139, 145 (3d Cir. 2010); *see also* Fed. R. Civ. P. 65.  It is the moving party who bears the burden of satisfying these factors.  If the movant fails to carry this burden on either of these elements, the motion should be denied since a party seeking such relief must "demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted."  *Hohe v. Casey*, 868 F.2d 69. 72 (3d Cir. 1989) (emphasis in original), *quoting Morton v. Beyer*, 822 F.2d 364 (3d Cir. 1987).

A preliminary injunction maintains the status quo pending a final decision on the merits whereas a "mandatory injunction" alters the status quo by granting injunctive relief, before trial, and as such is appropriate only in extraordinary circumstances. *Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir. 1994) ("A party seeking mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity.")

Mr. Allah has filed a motion for leave to file a motion for preliminary injunction and a motion for preliminary injunction. (ECF Nos. 7 and 8.) Due to his chronic and incurable illnesses, and short life expectancy, he seeks the Court to issue an order directing FCC-Allenwood officials to transfer him to a medical facility. (ECF No. 8.) Based on the Court's dismissal of the Complaint for failure to state a claim, Mr. Allah has not demonstrated a likelihood of success on the merits. Furthermore, as Mr. Allah not housed at FCC-Allenwood, his motions are moot. *See Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) (inmate's transfer to another prison rendered moot his request for preliminary injunctive relief related to his conditions of confinement).

An appropriate order will issue.

Date: September 19, 2019      /s/ A. Richard Caputo
      **A. RICHARD CAPUTO**
      **United States District Judge**